Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kate Chiplinsky, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Home Depot U.S.A., Inc,<br><br>*Defendant*. | Case No. 2:25-cv-08550-SSC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents

I. Introduction. 1
II. Parties. 3
III. Jurisdiction and Venue. 3
IV. Facts. 4
A. Defendant's fake sales and discounts. 4
B. Defendant's advertisements are unfair, deceptive, and unlawful. 15
C. Defendant's advertisements harm consumers. 16
D. Plaintiff was misled by Defendant's misrepresentations. 17
E. Defendant breached its contract with and warranties to Ms. Chiplinsky and the putative class. 20
F. No adequate remedy at law. 21
V. Class Action Allegations. 22
VI. Claims. 23
First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq. 23
Second Cause of Action: Violation of California's Consumer Legal Remedies Act 25
Third Cause of Action: Violation of California's Unfair Competition Law 28
Fourth Cause of Action: Breach of Contract 30
Fifth Cause of Action: Breach of Express Warranty 32
Sixth Cause of Action: Quasi-Contract/Unjust Enrichment 33
Seventh Cause of Action: Negligent Misrepresentation 33
Eighth Cause of Action: Intentional Misrepresentation 35
VII. Relief. 36

**I. Introduction.**

1. When a product is advertised as being on sale, this drives purchases. And there is nothing wrong with a legitimate sale. But some companies take advantage of consumers with fake sales: deceptive sales that aren't really discounts off the true regular price. To protect consumers, the law prohibits such deceptive sales.

2. Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") makes, markets, and sells bedding and bath products, including sheets, towels, pillows, and comforters, as well as loungewear and home décor (the "Company Store Products" or "Products"). The Products are sold online through Defendant's Company Store website, www.thecompanystore.com (the "Company Store Website" or the "Website").

3. On its Website, Defendant advertises substantial sitewide sales, lists purported regular prices, and offers steep discounts from those listed regular prices; for example by including the sale price in larger font next to the regular price placed in smaller gray strikethrough font, or by representing that a consumer will "[s]ave[]" or get a certain percentage off by purchasing. Examples are shown below:




*Captured April 26, 2025*




*Captured August 13, 2025*

4. But Defendant does not regularly sell its Products for the listed regular or strikethrough prices. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are almost always available for much less than that.

5. As described in greater detail below, Ms. Chiplinsky bought Products from Defendant from the Company Store Website. Defendant represented that the Products Ms. Chiplinsky purchased were being offered at a discount from the purported regular prices that Defendant advertised. And based on Defendant's representations, Ms. Chiplinsky believed that she was purchasing Products that had regular prices and market values equal to the list prices that Defendant advertised, and that she was receiving substantial discounts. These reasonable beliefs are what caused Ms. Chiplinsky to buy from Defendant when she did.

6. The representations Ms. Chiplinsky relied on, however, were not true. The purported regular prices were not the true regular prices that Defendant sells the

Products for, and the purported discounts were not the true discounts. Had Defendant been truthful, Ms. Chiplinsky and other consumers like her would not have purchased the Products, or would have paid less for them.

7. Plaintiff brings this case for herself and the other California customers who purchased Company Store Products advertised at a purported discount from Defendant's Company Store Website, www.thecompanystore.com.

## II. Parties.

8. Plaintiff Kate Chiplinsky is domiciled in Beverly Hills, CA.

9. The proposed class includes citizens of California.

10. Defendant Home Depot U.S.A., Inc. is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339.

## III. Jurisdiction and Venue.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12. The Court has personal jurisdiction over Defendant because Defendant sold Company Store Products to consumers in California, including to Plaintiff.

13. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Company Store Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Defendant's fake sales and discounts.

14. Defendant makes, markets, and sells bedding and bath products, including sheets, towels, pillows, and comforters, as well as loungewear and home décor. Defendant sells its Products directly to consumers online, including through its Website, www.thecompanystore.com.

15. On its Website, Defendant creates the false impression that its Products' regular prices are higher than they truly are. The Website advertises substantial sales offering "X% Off" sitewide, or else advertises substantial discounts on certain purchases or products and then offers "X% Off Everything Else" (e.g., "Up to 40% Off Epic Weekly Deals … 25% Off Everything Else").[1] The sales are advertised prominently on the Website's homepage, as well as on banners across the site. For example:

<u>Homepage</u>:




*Captured April 17, 2022*

[1] Defendant's sales include some limited restrictions and exclusions, including "new arrivals, heavy weight charges, past purchases, gift cards, taxes, shipping or processing charges." Most Products, however—including the Products purchased by Ms. Chiplinsky—are included in Defendant's sales and are almost always sold as a discount.




*Captured May 1, 2023*




*Captured November 22, 2024*




*Captured June 11, 2025*

<u>Banners</u>:




*Captured December 9, 2023*




*Captured June 14, 2023*




*Captured October 3, 2024*




*Captured November 3, 2024*




*Captured February 3, 2025*




*Captured July 9, 2025*

16. Pages across the Company Store Website also extensively advertise the purported sales, including on product search pages, on individual product pages, and during checkout. These pages advertise the sales in a variety of ways, including by showing allegedly on-sale items with a regular price (and purported former price) in strikethrough font alongside a supposedly discounted price in red, by advertising that a consumer is getting "X% Off" by purchasing, and by advertising that a consumer has "[s]aved" a specific amount by purchasing during the sale. For example:




*Captured May 3, 2023*




*Captured May 19, 2024*




*Captured February 3, 2025*




*Captured August 7, 2024*




*Captured September 3, 2025*




*Captured September 3, 2025*




*Captured September 3, 2025*

17. Defendant regularly represents that its purported sales on the Company Store Website are "[l]imited [t]ime" promotions that will end on a specific date (for

example, "Ends Today" or "Final Days"), or which are tied to specific holidays or events (for example, "Black Friday Sale," or "Weekend Summer Sale"). To reasonable consumers, this means that the sales will end at the listed time or shortly after the holiday that allegedly corresponds with the sale. And reasonable consumers believe that once the purportedly limited-time sale has ended, they will have to pay a Product's purported regular price and will not be able to get the Product for a discounted price.

18. But Defendant's sales are not really limited-time. Instead, immediately after each purportedly time-limited sale ends, Defendant generates another similar discount.

19. For example, on November 3, 2024, Defendant advertised a sale of "Up to 40% Off Epic Weekly Deals + 25% Off Everything Else," and claimed that the sale would end that day ("Ends Today"):




*Captured November 3, 2024*

20. But the exact same sale was available two days later, on November 5, 2024, this time advertised as a "Black Friday" sale:




*Captured November 5, 2024*

21. As a second example, on July 22, 2024, Defendant advertised a "Weekend Summer Sale" that purportedly ended that day and offered "35% Off" orders of "$400+" and "25% Off Everything Else":




*Captured July 22, 2024*

22. But the next day, July 23, 2024, the same Weekend Sumer Sale was "extended" and was still available:







*Captured July 23, 2024*

23. As shown above, in some cases, to obtain Defendant's advertised discounts on the Company Store Website, consumers must enter an advertised promotional code. When promotional codes are necessary to access a sale, the codes are prominently advertised across the Company Store Website. For example, promotional codes are routinely shown on the Website's home page and on the banner at the top of every page on the Website, as well as on search pages next to products, and on individual product pages. As a result of this extensive advertisement, reasonable consumers notice when Defendant advertises promotional codes. And, because reasonable consumers value discounts, when promotional codes are required to access a discount, the overwhelming

majority (if not all) of Defendant's sales are made by consumers using the promotional codes, at the advertised discount price (and not the supposedly regular list price).

24. To confirm that Defendant consistently offers discounts off of its purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[2] and screen captures from the Company Store Website. That investigation confirms that Defendant's use of false reference prices and misleading discounts has persisted continuously for years. For example, Plaintiff's Counsel randomly collected two screenshots a month of the Company Store homepage from January 2023 through August 2025. Of the 64 screenshots collected, 60—or around 94%—of them showed a sitewide sale or a near sitewide sale. Moreover, 56—or around 88%—of them showed a sitewide sale.

25. Some—but not all—of Defendant's sitewide sales on the Company Store Website are limited in their terms to purchases that total at least $75. However, a very large percentage of Company Store Products are advertised with list prices of at least $75 (including the pillow and towels purchased by Plaintiff). For these Products, Defendant's sitewide sales *always* apply because just purchasing one of the Products is sufficient to meet the $75 threshold. Plus, in any event, reasonable consumers want to access Defendant's sales and thus, will make purchases of over $75 to meet the threshold for the sale. So, as a result of both consumer behavior and Defendant's Products routinely costing at least $75, the vast majority of Defendant's sales meet the $75 threshold when it is applicable—meaning that the vast majority of sales of all Products are made at a sales price.

26. Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing. In other

---

[2] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

words, it leads reasonable consumers to believe that they will get a Product worth X at a discounted, lower price Y.

27. Based on Defendant's advertisements on the Website, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the prices at which the goods were actually offered for sale on the Website before the offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers had to pay on Defendant's Company Store Website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the sale, and after the sale ends, consumers buying from the Website had to (or will have to) pay the list price to get the item without an opportunity to get a discount from that list price.

28. Reasonable consumers also reasonably believe that the list prices Defendant advertises on the Website represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant always, or almost always, offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises on the Website are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are always, or almost always, available for less than that on the Website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discounts the customers are receiving, and are often not a discount at all.

29. Where, and to the extent that, Company Store Products are sold through additional sales channels, the Products are sold for prices far below the purported

regular prices shown on the Company Store Website. Indeed, prices charged for the Products in other sales channels naturally converge on the prices offered on the Company Store Website, because the branded Company Store Products are sold in an e-commerce market and Defendant, the manufacturer and primary retailer, sells the Company Store Products directly to consumers through its publicly available and branded Company Store Website.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

30. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

31. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

32. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code §§ 1770(a)(9), (a)(13).

33. In addition, the Federal Trade Commission's (FTC) regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons." *Id.*

34. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

35. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true

regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C. Defendant's advertisements harm consumers.**

36. Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the discount was introduced.

37. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

38. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

39. By definition, reasonable consumers expect a sale to be time-limited (otherwise, it is not a sale, it is just the regular price).

40. Putative class members are still not aware of Defendant's fake sale scheme. Absent class members will learn of the scheme for the first time upon court-ordered class notice in this case.

41. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a

promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

42. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the Class paid more for the Products they bought than they otherwise would have.

43. This is deliberate. Defendant has adopted a company policy of advertising fake discounts, false regular and former prices, and false discounted prices for Company Store Products sold on the Website. This discount and price advertising policy is created or ratified by Defendant's officers, directors, or managing agents.

**D. Plaintiff was misled by Defendant's misrepresentations.**

44. According to her receipt, on or around November 4, 2024, Ms. Chiplinsky purchased several Products from the Company Store Website, including a Company Essentials™ Knee and Leg Posture Pillow, two Company Essentials™ Knee and Leg Posture Pillow Covers, and two Legends Luxury™ Sterling Supima® Cotton Bath Towels.

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

45. At the time of her purchase, Defendant was running a "Black Friday" sale offering a supposed 25% off all Products.

46. As a result, when Ms. Chiplinsky made her purchase, she received a purported 25% off of each of the Products she purchased. Her discount was memorialized in her email confirmation, as well as in the "order status" information for her order on the Company Store Website:




47. Plaintiff read and relied on Defendant's representations concerning its advertised sale, which were important in driving her purchase. In particular, Ms. Chiplinsky read and relied on the representations shown above on the Company Store Website, specifically that the Products she was purchasing had the regular prices listed on the Website in strikethrough font, but were being offered at a discounted sale price from that regular price, and that the sale was limited-time and would end. For example,

for the Company Essentials™ Knee and Leg Posture Pillow, she read and relied on Defendant's representation that the Product had a regular price of $79, but was being offered at the discounted price of $59.25 for a limited time.

48. Based on Defendant's representations described above, Plaintiff reasonably understood that: (1) Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices (shown in strikethrough font) on the Company Store Website; (2) the regular prices were the prevailing prices and market values of the Products that she was buying; (3) she was receiving the advertised discounts as compared to the regular prices; (4) the advertised discounts were only available for a limited time (during the limited-time promotion); and (5) the Products would go back to retailing for the published regular prices when the promotion ended.

49. In reality, as explained above, Defendant's Products, including the Products that Ms. Chiplinsky purchased were almost always available at a discounted price off of the purported regular prices. In other words, Defendant did not regularly sell the Products Ms. Chiplinsky purchased at the purported regular prices, and the Products were not discounted as advertised. Defendant's Products are always, or almost always, purportedly on sale.

50. Ms. Chiplinsky would not have made her purchase, at the price she paid, if she had known that the Products were not really discounted, and that she was not receiving the advertised discounts.

51. Plaintiff and other reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring the Website every day for months or years. And even a consumer who occasionally checks the Company Store Website would reasonably believe that there happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

52. Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's

regular prices were honest and that its sales were real. But without a court injunction ordering Defendant to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future, and so cannot purchase Products she would otherwise like to purchase.

**E. Defendant breached its contract with and warranties to Ms. Chiplinsky and the putative class.**

53. When Ms. Chiplinsky, and other members of the putative class, purchased and paid for the Company Store Products that they bought, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having particular listed regular prices and market values, and to provide those Products at the discounted prices advertised on the Company Store Website.

54. Defendant's Company Store Website lists the market value of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. Chiplinsky and putative class members. For example, Defendant offered to provide Ms. Chiplinsky (among other things) the Products she purchased at a specific discount from the regular prices. Defendant also warranted that the regular prices and market values of the Products Ms. Chiplinsky purchased were the advertised list prices (*e.g.*, the strikethrough prices) and warranted that Ms. Chiplinsky was receiving a specific discount on the Products.

55. The regular prices and market values of the items Ms. Chiplinsky and putative class members would receive, and the amount of the discounts they would be provided off the regular prices of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

56. Ms. Chiplinsky and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

57. Defendant breached its contract by failing to provide Ms. Chiplinsky and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**F. No adequate remedy at law.**

58. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

59. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

60. In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

61. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

62. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Company Store Products from Defendant again in the future if she could feel sure that Defendant's regular prices

accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, she is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

## V. Class Action Allegations.

63. Plaintiff brings the asserted claims on behalf of the following proposed class:

- California Class (or, the "Class"): all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Company Store Products at a purported discount price from Defendant's Company Store Website, www.thecompanystore.com.

64. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

65. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

***Predominance of Common Questions***

66. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

67. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Company Store Products advertised at a discount on Defendant's Company Store Website. There are no conflicts of interest between Plaintiff and the class.

***Superiority***

68. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of tens or hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**<u>First Cause of Action</u>:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiff and the California Class)**

69. Plaintiff incorporates each and every factual allegation set forth above.

70. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

71. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

72. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members.

73. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by showing allegedly on-sale items with a regular price (and purported former price) in strikethrough font alongside a supposedly discounted price, by advertising that a consumer is getting "X% Off" by purchasing, and by advertising that a consumer has "[s]aved" a specific amount by purchasing during the sale. Reasonable consumers understand prices advertised in strikethrough font, as well as those advertised next to "X% Off" representations, to denote "former" prices, i.e., the prices that Defendant charged before the discount went into effect.

74. The prices advertised by Defendant are not Defendant's regular prices. In fact, those prices are never, or almost never, Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question) because there is always, or almost always, a promotion ongoing making a discount available. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.

75. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

76. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Company Store Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

77. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Company Store Products.

78. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

79. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of, or ratification by, Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and Class Members rely on them.

80. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

81. For the claims under California's False Advertising Law, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the California Class)**

82. Plaintiff incorporates each and every factual allegation set forth above.

83. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

84. Plaintiff and the Class are "consumer[s]," as the term is defined by California Civil Code § 1761(d).

85. Plaintiff and the Class have engaged in "transaction[s]" with Defendant as that term is defined by California Civil Code § 1761(e).

86. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

87. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

88. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

89. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

90. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

91. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning the existence of, or amounts

of, price reductions on its Company Store Website, including by (1) misrepresenting the regular price of Products on its Website and (2) advertising discounts and savings that are exaggerated or nonexistent.

92. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

93. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Company Store Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

94. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Company Store Products.

95. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

96. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of, or ratification by, Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and Class Members rely on them.

97. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

98. Under California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and the Class, seeks injunctive relief.

99. CLRA § 1782 NOTICE. On September 4, 2025, a CLRA demand letter was sent to Defendant's principal place of business and to its registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. In her initial Complaint, Plaintiff only sought injunctive relief, and did not seek damages, on her CLRA claim. But she stated that "If Defendant does not fully correct the problem for Plaintiff and for each member of the California Class within 30 days of receipt, Plaintiff and the California Class will seek all monetary relief allowed under the CLRA." Now, 30 days have passed and Defendant has not corrected the problem for Plaintiff and for each member of the California Class. Accordingly, Plaintiff seeks all monetary and equitable relief available under the CLRA, including restitution, damages, punitive damages, and reasonable attorney fees.

100. Plaintiff previously filed a CLRA venue declaration. *See* Dkt. 1-1.

**Third Cause of Action:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Class)**

101. Plaintiff incorporates each and every factual allegation set forth above.

102. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

103. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

104. Defendant engaged in unlawful conduct by violating the FTC's regulations, the CLRA, and the FAL as alleged above and incorporated here.

***The Deceptive Prong***

105. As alleged in detail above, Defendant's representations that its Products were on sale, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

106. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

107. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

108. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the Products had a specific regular price, and that the customers were receiving discounts.

109. Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

110. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer advertising only injures healthy competition and harm consumers.

111. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

112. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

113. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Company Store Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

114. In addition, Class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Company Store Products.

115. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

116. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of, or ratification by, Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and Class Members rely on them.

117. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

118. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Fourth Cause of Action</u>:**

**Breach of Contract**

**(By Plaintiff and the California Class)**

119. Plaintiff incorporates each and every factual allegation set forth above.

120. Plaintiff brings this cause of action on behalf of herself and the California Class.

121. Plaintiff and Class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's Company Store Website.

122. The contracts provided that Plaintiff and Class members would pay Defendant for the Products ordered.

123. The contracts further required that Defendant provide Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the Website. They also required that Defendant provide Plaintiff and Class members with the discount advertised on the Website. These were specific and material terms of the contract.

124. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

125. Plaintiff and Class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

126. Defendant breached its contracts with Plaintiff and Class members by failing to provide Products that had a market value equal to the regular price displayed on its Website, and by failing to provide the promised discount. Defendant did not provide the discount that Defendant had promised.

127. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

128. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's registered agent and to Defendant's Georgia Headquarters on September 4, 2025.

129. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Fifth Cause of Action</u>:**

**Breach of Express Warranty**

**(By Plaintiff and the California Class)**

130. Plaintiff incorporates each and every factual allegation set forth above.

131. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

132. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Company Store Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's Company Store Website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

133. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

134. In fact, the Company Store Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

135. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and to Defendant's Georgia Headquarters on September 4, 2025.

136. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

137. For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the California Class)**

138. Plaintiff incorporates the facts alleged above, except that Plaintiff brings this cause of action in the alternative to her Breach of Contract claim.

139. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the California Class.

140. As alleged in detail above, Defendant's false and misleading advertising artificially increases consumer demand for Defendant's Products, which puts upward pressure on the prices that Defendant can charge for its Products and allows Defendant to charge a price premium for its Products. So, due to Defendant's misrepresentations, Plaintiff and the class purchased, and paid more for the Products they bought than they otherwise would have (or, in other words, paid a price premium).

141. In this way, Defendant received a direct and unjust benefit, from its false and misleading advertising, at Plaintiff's and the Class's expense.

142. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

143. Plaintiff and the Class seek restitution, and in the alternative, rescission.

144. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiff and the California Class)**

145. Plaintiff incorporates each and every factual allegation set forth above.

146. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

147. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Class members concerning the existence and/or nature of the discounts and savings advertised on its Company Store Website.

148. These representations were false.

149. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

150. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

151. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Company Store Products.

152. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Class members.

153. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of, or ratification by, Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and Class Members rely on them.

154. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or

(c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

155. For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## <u>Eighth Cause of Action</u>:

## Intentional Misrepresentation

## (By Plaintiff and the California Class)

156. Plaintiff incorporates each and every factual allegation set forth above.

157. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

158. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Class members concerning the existence and/or nature of the discounts and savings advertised on its Company Store Website.

159. These representations were false.

160. When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

161. Defendant intended that Plaintiff and California Class members rely on these representations and Plaintiff and California Class members read and reasonably relied on them.

162. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Company Store Products.

163. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Class members.

164. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of, or ratification by, Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and Class Members rely on them.

165. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

166. For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

167. Plaintiff seeks the following relief for herself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## Demand For Jury Trial

168. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: January 13, 2026

Respectfully submitted,

By: */s/ Grace Bennett*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*